```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT BLUEFIELD
```

**UNITED STATES OF AMERICA**

v.                                    CRIMINAL NO. 1:17-00195-01

**WINDEL LESTER**

## MEMORANDUM OPINION AND ORDER

Pending before the court is Windel Lester's motion for production of records pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. ECF No. 179. For the reasons stated herein, the motion is **DENIED** for lack of specificity.

### I. BACKGROUND

Windel Lester, along with others, has been named in 30 counts of a 40-count Second Superseding Indictment, which charges wire fraud, conspiracy to use and the use of fire in the commission of mail and wire fraud, conspiracy to commit money laundering, and unlawful monetary transactions. ECF No. 142. Each charge stems from three alleged schemes to defraud insurers by filing false insurance claims and collecting proceeds after purchasing and setting fire to homes located in Matoaka, Huntington, and Ikes Fork, West Virginia. See id.

Dudley Bledsoe is an unindicted co-conspirator who allegedly assisted in setting the fire to the Matoaka property, filing an insurance claim, and collecting insurance proceeds.

1

On March 14, 2018, Dudley Bledsoe came before this court and pled guilty to an Information which charged him with one count of unlawful monetary transactions in violation of 18 U.S.C. §§ 1957 and 2. See United States v. Bledsoe, 1:18-cr-00035, ECF No. 11. This charge related to the receipt of insurance proceeds after the fire on the Matoaka property. Thus, defendant contends that Bledsoe will serve as a pivotal witness in the government's case-in-chief.

Counsel for Lester requests that this court issue a Rule 17(c) subpoena ordering the production of Bledsoe's pharmaceutical records from three (3) pharmacies and Bledsoe's social security disability records from the Social Security Administration in advance of trial. ECF No. 179. Counsel for Bledsoe, Jeffrey Simpkins orally conferred his opposition to the requests to Lester's counsel. Id. at ¶ 2.

As grounds for the motion, Lester states Bledsoe's "competency and credibility are at issue." Id. at ¶ 8. Specifically, the motion alleges that these records will demonstrate the basis for Bledsoe's social security award as well as Bledsoe's drug usage and abuse.[1] Id. at ¶ 3. Lester's Reply Brief attaches an affidavit from Misty Lee, a clerk at Lester's Home Center stating:

---

[1] Although Lester includes no evidence of alleged drug usage, abuse, or any evidence of such within its motion and Reply brief.

    (1)    Bledsoe has cashed social security checks at Lester Home Center for approximately nine years which include Bledsoe's wife as payee; and

    (2)    Bledsoe has stated "I am crazy and have papers to prove it" and that "I have to go to the crazy doctor."

ECF No. 184-1.

The government also opposes issuance of the subpoena. See ECF No. 180. Regarding the social security records, the government asserts that the requested subpoena amounts to a fishing expedition, the requests are not relevant to any issue at trial, and Bledsoe's receipt of social security benefits will not overcome his competency. Additionally, the government states Bledsoe's pharmaceutical records are inadmissible as Bledsoe has no felony drug convictions that are admissable under Federal Rule of Evidence 609. Id.

## II.  APPLICABLE LAW

Rule 17(c) of the Federal Rules of Criminal Procedure provides in pertinent part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

The district court retains the authority to "quash or modify the subpoena if compliance would be unreasonable or oppressive," Fed. R. Crim. P. 17(c)(2). "A subpoena is unreasonable or

3

oppressive if it is 'excessively broad' or 'overly vague.'" United States v. Richardson, 607 F.3d 357, 368 (4th Cir. 2010), citing United States v. Under Seal (In re Grand Jury), 478 F.3d 581, 584 (4th Cir. 2007).

In the seminal case of Bowman Dairy Co. v. United States, the United States Supreme Court stated, "Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." 341 U.S. 214, 220 (1951); see also United States v. Caro, 597 F.3d 608, 616 (4th Cir. 2010) ("[A] Rule 17 subpoena duces tecum cannot substitute for the limited discovery otherwise permitted in criminal cases and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena.") (internal quotation marks omitted).

United States v. Nixon was the first time the Supreme Court addressed a Rule 17(c) subpoena sent to a non-party.[2] 428 U.S. 683 (1974). Here, upon motion of the Special Prosecutor, the Rule 17(c) subpoena requested the production "of certain tapes, memoranda, papers, transcripts or other writings relating to certain precisely identified meetings between the President and others." Id. at 688. These specific meetings and their

---

[2] Albeit extraordinary non-party: Richard Nixon, the President of the United States.

4

respective dates were enumerated in a schedule attached to the subpoena. Id. at 688, fn.5. The Supreme Court, in concluding that a sufficient showing was made by the Special Prosecutor, held that the requesting party bears the burden of showing:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. at 699–700 (footnote omitted). More succinctly, "in order to carry his burden, [the moving party] must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. at 700.

Rule 17(c) subpoenas often fail to pass the muster of Nixon's "specificity" prong because, as stated infra, Rule 17(c) is not intended as a method of general discovery. Id. at 699-700, following Bowman Dairy Co., 341 U.S. at 220. The Fourth Circuit recently illustrated the Nixon specificity threshold in United States v. Rand 835 F.3d 451, 463 (4th Cir.), cert. denied, 137 S. Ct. 525 (2016).[3] In the case, the defendant

---

[3] In this case, the Fourth Circuit expressly followed Nixon, "declin[ing] to adopt a lower standard for third-party subpoenas under Rule 17(c)." Rand, 835 F.3d at 463 (quotations and citations omitted). In doing so, the Fourth Circuit refused to adopt a lower standard for criminal defendants crafted in United States v. Tucker, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), whereby

Michael Rand, the chief accounting officer of a home-building company, Beazer, was charged with improperly adjusting the company's earnings. Id. at 451. Rand sought the production pursuant to Rule 17(c) of Beazer's "accounting entries, budgets, budget entries and financial reports for seven categories of reserve accounts over an eight-year period—the timeframe of the alleged conspiracy." Id. at 463. Rand argued that these documents "would have enabled him to show the reasonableness of the reserve adjustments looking more broadly at Beazer resources and over a period of time." Id. The Fourth Circuit affirmed the district court's refusal to issue the subpoena because defendant's broad request was not appropriately limited, but instead "more of a fishing expadedition, frowned upon by Nixon." Id. at 463-64.

### III. DISCUSSION

Lester's requests fail the "specificity" prong of Nixon. By not specifically including the extent, timeframe, or any limiting factor regarding Bledsoe's pharmaceutical and social security disability records, the proposed subpoena "cast[s] a wide net that betokens a general fishing expedition." See Caro,

---

criminal defendants "need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." Id. Accordingly, this court follows the three-prong Nixon test.

6

597 F.3d at 620 (citations omitted). Accordingly, the court declines to engage in its own hypothetical analysis of the specific "records" sought by Lester that may arise from his bare-bones request. See United States v. Ging-HwangTsoa, No. 1:13cr137, 2013 WL 5837631, at *2 (E.D. Va. Oct. 29, 2013) ("The Fourth Circuit has repeatedly stressed that Rule 17(c) is not a general discovery device, and to that end, the party requesting the information must identify with specificity what is sought."). Accordingly, the court denies plaintiff's motion and instructs Lester to consider the directives of Nixon and its progeny if it again seeks issuance of a 17(c) subpoena.

It is worth noting that the foundation of Lester's requests may be unable to accord with Nixon. Nixon also requires that the requested documents are relevant and admissible. Lester argues the alleged relevancy of its requests are founded upon discrediting Bledsoe's competency to testify. As the United States details in its Response, a witness' competency pursuant to Federal Rule of Evidence 601, is a low bar. The Advisory Note to Rule 601 states:

> Discretion is regularly exercised in favor of allowing the testimony. A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence.

7

(emphasis added).  Lester does not cite, nor can the court find, where the Federal Rules of Evidence would disqualify Bledsoe from testifying due to his collective (1) receipt of social security benefits, (2) incompetency to handle his financial affairs, and (3) alleged use and abuse of prescription medications.[4]

Even more, the affidavit of Misty Lee, see ECF No. 184-1, indicates that she can testify to each of these matters without the court allowing the defendant to engage in a fishing expedition to investigate and uncover the root cause of Bledsoe's medicinal use and underlying disability.  On the other hand, if Lester seeks the issuance of the 17(c) subpoena for impeachment evidence, Lester bears the burden of establishing how the subpoenaed evidence is admissible contrary to the assertions of the government in its Response.

The court stresses Nixon's requirement of specificity.  See Rand, 835 F.3d at 463; see also United States v. Ventola, No. CR 15-10356-DPW, 2017 WL 2468777, at *2 (D. Mass. June 7, 2017) (quashing request that failed to indicate "specific documents or even a specific, discrete set of documents"); United States v. Hamlin, No. RWT 15-CR-0378, 2016 WL 10880219, at *2 (D. Md. Feb.

---

[4] In contrast, after questioning Bledsoe personally and inquiring of his counsel and the government, this court found him competent to proceed at his March 14, 2018 guilty plea hearing. See United States v. Bledsoe, 1:18-cr-00035, ECF No. 11.

8, 2016) (request for "any and all records pertaining . . ." lacks specificity). Again, Rule 17(c) subpoenas are not a general device to investigate. See Nixon, 418 U.S. at 699; Rand, 835 F.3d at 464 ("The right to defend oneself does not extend to using the power of the Court to compel third parties to provide information that may not even be admissible at trial or at a hearing or that is merely 'investigatory.'") (emphasis added) (quoting United States v. Al-Amin, No. 1:12-CR-50, 2013 WL 3865079, at *7 (E.D. Tenn. July 25, 2013).

## IV. CONCLUSION

Accordingly, the Court **DENIES** defendant's Motion for Production of Records. ECF No. 179. In the event that defendant is able to construct a Rule 17(c) subpoena[5] and articulate its conformity with Nixon, the court allows the defendant to make another request of the court.

The Clerk is directed to send a copy of this Order to counsel of record and Jeff Simpkins, Esq.

**IT IS SO ORDERED** this 10th day of April 2018.

ENTER:

David A. Faber
Senior United States District Judge

---

[5] If Lester renews his request for a Rule 17(c) subpoena, the court directs him to attach the proposed 17(c) subpoena.

9